```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
OCEAN HARBOR CASUALTY              :
INSURANCE COMPANY,                 :
                                   :
                Plaintiff,         :   **MEMORANDUM**
                                   :   **DECISION AND ORDER**
       -against-                   :
                                   :   19-cv-3778 (BMC)
GREAT AMERICAN E&S INSURANCE       :
COMPANY,                           :
                Defendant.         :
                                   :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

This insurance dispute arose after a fire engulfed Andrea Afam's home, resulting in her death and the complete destruction of her home. Two insurance policies covered the loss, the first issued by plaintiff, Ocean Harbor Casualty Insurance Company ("Ocean Harbor"), and the second by defendant, Great American E&S Insurance Company ("GAIC").

Ocean Harbor seeks a declaratory judgment that it need only contribute 50% towards the loss amount of the premises. GAIC has filed two counterclaims, alleging Ocean Harbor should reimburse it for the entire amount ($378,799.30) because it claims it was required under federal and state law to return Afam's monthly insurance premiums to her estate once the existence of concurrent hazard insurance was uncovered.

GAIC's arguments that its insurance policy with Selene Finance is *void ab initio* or may be rescinded for failure of consideration lack merit, and I therefore deny GAIC's motion for summary judgment as to its counterclaims and grant Ocean Harbor's motion for summary judgment. As primary co-insurers, the parties are obligated to share the loss equally.

**BACKGROUND**

Afam owned a home, and Selene Finance LP ("Selene") serviced Afam's mortgage as her lender/mortgagee. Afam maintained homeowner's insurance through Ocean Harbor, whose insurance policy provided up to $550,000 in property damage coverage for the premises. On August 2017, Ocean Harbor issued a Notice of Cancellation to Afam, also notifying Selene, because Afam didn't pay her monthly premiums. Ocean Harbor later reinstated the policy after Afam sent in her delinquent payment. Around September 8, 2017, Ocean Harbor issued Afam another Notice of Cancellation, which it again sent to Selene. That notice advised both parties that Afam's policy would be cancelled effective September 25, 2017 because an inspection of Afam's property revealed that the "number of families had exceeded [Ocean Harbor's] guidelines" and there was "excessive trash/debris" in the yard.

As Afam's mortgagee, Selene had an interest to ensure that the property was adequately covered by insurance in the event of a loss. It sent letters to Afam, requesting that she provide proof of hazard insurance, but Afam never responded to these letters. Nevertheless, without Selene's knowledge, Ocean Harbor later reinstated its policy on September 21, 2017 after Afam represented that her property was occupied by only two families and provided photos showing her yard had been cleaned up.

Still under the mistaken belief that Afam's property was uninsured, GAIC claims that Selene advised Afam on December 21, 2017 that it had purchased lender-placed hazard insurance ("forced-placed insurance") for her property retroactive to September 25, 2017, as its records reflected that her hazard policy with Ocean Harbor had expired. This was accomplished by adding coverage for the premises in the amount of $550,000 for property damage through

Selene's Commercial Property policy issued by GAIC.  The insurance policy covered not only Afam's property, but "all buildings and properties" nationwide in which Selene had an interest.

Both insurance policies contained "other insurance" clauses.  Ocean Harbor's policy stated:

> If a loss covered by this policy is covered by: (1) Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or (2) a service agreement, this insurance is excess over any amounts payable under any such agreement.  Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

GAIC's "other insurance" clause stated:

> 1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.
>
> 2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

The fire occurred in April 2018.   GAIC paid Selene $378,779.30 to cover the actual cash value of the Afam property loss, less the deductible.  Ocean Harbor offered to reimburse GAIC for 50% of the claim, but GAIC rejected this offer.

## DISCUSSION

"The general rule under New York law is that there is a well-settled equitable right to contribution, where there is concurrent insurance even in the absence of a policy provision for apportionment, and that where each of the policies covering the risk generally purports to be excess to the other, the excess coverage clauses are held to cancel out each other and each insurer

3

contributes in proportion to its limit amount of insurance." United States Fire Ins. Co. v. Fed. Ins. Co., 858 F.2d 882, 885 (2d Cir. 1988) (internal quotation marks and alterations omitted).

When determining whether insurance plans are subject to the same plan, terms, conditions, and provisions, "[t]he test to be applied is not identity in minute particular of the terms, conditions and provisions of each policy, but whether the policies insure the same property, the same interests and against the same risk." Cont'l Ins. Co. v. Commercial Union Ins. Co., 27 A.D.2d 333, 336, 278 N.Y.S.2d 995, 998 (1st Dep't 1967). "Where the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage, priority of coverage among the policies is determined by comparison of their respective 'other insurance' clauses." Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, Pa., 65 A.D.3d 12, 18, 878 N.Y.S.2d 339, 345 (1st Dep't 2009) (internal citations omitted). "An other insurance clause limits an insurer's liability where other insurance may cover the same loss." Id. (internal quotation marks, alterations, and citations omitted).

Here, both insurance policies covered the same person (i.e., Selene), the same risk (i.e., fire hazard), and the same interest (i.e., the mortgagee's interest in Afam's property). Specifically, GAIC's policy stated it would cover "all buildings and personal property in which [Selene] has an interest" as mortgagee or servicing agent, including interests in residential property and losses caused by fire. GAIC acknowledged its obligation to provide coverage in these circumstances when it paid Selene for the entire loss to Afam's property. Similarly, Ocean Harbor concedes it also had a legal duty to cover a loss to Afam's property, including a fire hazard, at a *pro rata* amount payable to Selene because Ocean Harbor's policy with Afam included a standard mortgagee clause. See Syracuse Sav. Bank v. Yorkshire Ins. Co., Ltd., 301 N.Y. 403, 407, 94 N.E.2d 73, 75 (1950) (the inclusion of a mortgagee clause creates an

4

independent insurance of the mortgagee's interest just as if he had received a separate policy from the company).

As to whether the parties were primary co-insurers, we must look at the "other insurance" provisions in their respective policies. Ocean Harbor's policy provides that, in the event there is another insurance policy, it must pay its *pro rata* share if there is loss and up to an amount of $550,000. Likewise, GAIC's policy states that if another insurance policy is subject to the same "plan, terms, conditions and provisions," then GAIC's share is also proportional and up to $550,000. Not only did the parties' policies provide coverage for the same interest and against the same risk, see Federal Ins. Co. v. Empire Mut. Ins. Co., 181 A.D.2d 568, 569, 581 N.Y.S.2d 56 (1st Dep't 1992), their "other insurance" policies required them to pay out losses in identical portions. Accordingly, the parties are primary co-insurers equally responsible for the loss.

It is immaterial that GAIC's policy was called a "Commercial Policy" and provided much broader coverage in determining whether the two policies covered the same risk. See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hartford Ins. Co. of Midwest, 248 A.D.2d 78, 84, 677 N.Y.S.2d 105 (1st Dep't 1998) ("The fact that the Hartford policy was a commercial general liability policy, much broader than National Union's, does not establish that the policies did not insure the same risk"), aff'd, 93 N.Y.2d 983, 695 N.Y.S.2d 740 (1999). Furthermore, despite being labeled a "Commercial Policy," GAIC's policy expressly covered residential homes in which Selene held an interest.

GAIC also argues that Ocean Harbor should reimburse it for the entire loss because GAIC was legally obligated under federal and state law to return Afam's premiums to her estate once it was revealed that her policy with Ocean Harbor had been retroactively reinstated. GAIC relies on a subsection within the implementing regulations of the Real Estate Settlement

Procedures Act ("RESPA"), 12 U.S.C. § 2605(f), namely, Regulation X, 12 C.F.R. § 1024.37(e)(2)(xi). That regulation requires that

> [w]ithin 15 days of receiving from the borrower or otherwise, evidence demonstrating that the borrower has had in place hazard insurance that complies with the loan contract's requirement to maintain hazard insurance, a servicer must: (1) Cancel the forced-placed insurance the servicer purchased to insure the borrower's property; and (2) Refund to such borrower all forced-placed insurance premium charges and related fees paid by such borrower for any period of overlapping insurance coverage….

New York has an equivalent rule. See 11 N.Y.C.R.R. § 227.5.

Based on these federal and state regulations, GAIC argues that, since it was required to cancel Selene's force-placed insurance on Afam's property and return the premiums once Ocean Harbor's reinstated policy was uncovered, its later-in-time policy was *void ad initio* or, alternatively, it should be able to rescind the contract because there was a failure of consideration. In other words, the mandated refund of premiums resulted in the "retroactive" cancellation of its policy with Selene.

I am unconvinced that Regulation X may be used as a sword by GAIC to renege on its contractual obligations for several reasons. Foremost, by its plain terms, the regulation only imposes duties on a servicer, see Christiana Trust v. Riddle, 911 F.3d 799, 804 (5th Cir. 2018), which is defined as a "person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan)." 12 C.F.R. § 1024.1.2(a). GAIC is an insurance company and it had no role in the servicing of a federal loan. It merely provided force-placed insurance as the servicer's request. Therefore, the obligation to return Afam's premiums should have been borne by Selene, the person responsible for servicing her mortgage. GAIC had no obligation to return the premiums under that particular provision.

6

In addition, the regulation does not provide that the servicer's policy is void *ab initio*. GAIC fails to provide any authority for such a counterintuitive proposition. Although Regulation X requires the return of premiums to the borrower, the regulation fails to mention whether the policy may be retroactively cancelled. To the contrary, the regulation suggests that any cancellation should be "prospective" – declaring that the servicer "must [c]ancel the forced-place insurance plan." See 12 C.F.R. § 1024.37(e)(2)(xi).

More importantly, GAIC's attempt to exploit Regulation X in this manner is inconsistent with the underlying statute's remedial purpose. Congress identified that one of RESPA's purposes was to eliminate the kickbacks or referral schemes perpetuated by mortgage loan servicers and force-placed insurers that resulted in excessive insurance premiums on consumers. See Cohen v. J.P. Morgan Chase & Co., 498 F.3d 111, 122 (2d Cir. 2007). In other words, the statute was specifically designed to protect homeowners. This is further demonstrated by the fact that RESPA only creates causes of action in favor of borrowers. See Keen v. Helson, 930 F.3d 799, 802 (6th Cir. 2019). Given its consumer-protection purpose, it would be unreasonable to interpret RESPA in a manner to reward insurers with a windfall by allowing them to evade their responsibilities through retroactive cancellation of insurance policies. Such an interpretation would potentially expose a borrower with concurrent coverage to unnecessary and substantial risk in the event one insurer refused the pay an insurance claim, say for material misrepresentation or untimeliness, while the second insurer invoked RESPA to retroactively cancel the policy. In that scenario, a borrower would be left without any coverage whatsoever after a total loss.

Although GAIC may not be subject the that particular provision within Regulation X, it does have an obligation to abide by 11 N.Y.C.R.R. § 227.5, a state rule applicable to insurers.

Like its federal counterpart, the purpose of the state rule is to "protect homeowners and borrowers from harm caused by excessive forced-placed insurance rates, questionable business practices and relationships in the force-placed insurance industry, and inadequate notice of force-placed insurance." 11 N.Y.C.R.R. § 227.0. Nothing in the rule suggests an insurer may retroactively cancel a policy when there is concurrent coverage, nor does GAIC provide any authority for this proposition.

Therefore, the plain language of GAIC's policy and its "other insurance" clause controls this case. Under the terms and conditions of its policy, GAIC must provide its proportional share if there is concurrent coverage. That clause does not become inoperative simply because a servicer and insurer thrust upon a homeowner forced-placed insurance at the homeowner's expense for several months.

As to GAIC's failure of consideration argument, this lacks merit for two reasons. First, there was a full exchange of valid consideration and performance in this case. Selene had an insurance policy with GAIC for coverage for all of its properties in which it held an interest as a servicer or mortgagee, including residential homes. Selene promised to pay monthly premiums, and there is no evidence before me that it failed in this obligation. In turn, GAIC fully performed on the contract by paying for the loss that occurred at Afam's property after the fire. Accordingly, there was no failure in consideration because both parties fulfilled their duties pursuant to the agreed upon *quid pro quo*. See Fugelsang v. Fugelsang, 131 A.D.2d 810, 812, 517 N.Y.S.2d 176 (2nd Dep't 1987).

Second, the forced-placed insurance coverage on Afam's property formed only a small portion of the consideration between GAIC and Selene. The commercial policy issued by GAIC didn't just cover the Afam property, but also "all buildings and properties" across the nation in

which Selene had an interest. In other words, the policy encompassed a number of unrelated properties for which the policy remained valid. It is apparent that the contractual relationship between Selene and GAIC remained intact and supported by sufficient consideration. That is why GAIC paid Selene and is not seeking recoupment from it.[1]

It follows from the discussion above that Ocean Harbor is also entitled to summary judgment, dismissing GAIC's two counterclaims. GAIC cannot prevail on its equitable subrogation claim because the doctrine of subrogation does not permit causes of actions against parties who did not cause the loss. Nat'l Union Fire Ins. Co. v. Ranger Ins. Co., 190 A.D.2d 395, 398, 599 N.Y.S.2d 347 (4th Dep't 1993). Accordingly, the Second Circuit has held that this action is only available when an insurer is seeking reimbursement from a third-party tortfeasor legally responsible for the loss. See Maryland Cas. Co. v. W.R. Grace & Co., 218 F.3d 204, 211 (2d Cir. 2000). Permitting subrogation against a non-tortfeasor third party insurer "would violate fundamental principles of restitution or unjust enrichment laws on which the doctrine of subrogation rests." Id. at 210 (citation omitted). GAIC of course does not allege that Ocean Harbor was the negligent party responsible for causing the loss to Afam's property.

As to GAIC's final counterclaim, there is no recognized cause of action for equitable indemnity under New York law. See United Nat'l Ins. Co. v. Travelers Prop. Cas. Co. of Am., 158 A.D.3d 593, 594, 68 N.Y.S.3d 881 (1st Dep't 2018).

---

[1] GAIC's reliance on Dolan v. Select Portfolio Servicing Inc., No. 03-cv-3285, 2017 WL 4357336 (E.D.N.Y. Sept. 29, 2017), is worse than misplaced. The case has nothing to do with the issues here, and the snippet of expert testimony upon which GAIC relies is not even dictum.

## CONCLUSION

Ocean Harbor's motion for summary judgment [12] is granted, and GAIC's motion for summary judgment [16] as to its counterclaims is denied.

The Court declares the following: the parties' respective insurance policies provide the same level and priority of coverage; the parties are required to cover the loss to the Afam property on a *pro rata* or proportional basis; and thus, Ocean Harbor is required to contribute half of the amount paid to Selene. The Clerk is directed to enter judgment in favor of Ocean Harbor granting its motion for summary judgment, denying GAIC's motion for summary judgment, and declaring the parties' rights and obligations consistent with this decision.

**SO ORDERED.**

                                                                                          _____
                                                                                                            U.S.D.J.

Dated: Brooklyn, New York
           April 14, 2020